MICHAEL L. FRADIN (SBN 6289502)
mike@fradinlaw.com
LAW OFFICE OF MICHAEL L. FRADIN
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847/986-5889
Facsimile: 847/673-1228

BRIAN D. CHASE (*pro hac vice pending*)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (*pro hac vice pending*)
jbeligan@bisnarchase.com
IAN SILVERS (*pro hac vice pending*)
isilvers@bisnarchase.com
BISNAR|CHASE LLP
1301 Dove Street, Suite 120
Newport Beach, California 92660
Telephone:  949/752-2999
Facsimile:  949/752-2777

Attorneys for Plaintiff and Putative Classes

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Samantha Young** <br> on behalf of herself <br> and all others similarly situated, <br> known and unknown, <br><br> Plaintiff <br><br> v. <br><br> **Shipt, Inc.** <br><br> Defendant | **No:** <br><br> **District Judge:** <br><br> **Magistrate:** <br><br> RULE 216(B) <br> COLLECTIVE <br> ACTION <br><br> RULE 23 <br> CLASS ACTION <br><br> ***JURY DEMAND*** |

1

## CLASS AND COLLECTIVE ACTION COMPLAINT

NOW COMES plaintiff Samantha Young ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, Michael L. Fradin and Bisnar | Chase LLP, and for her Complaint against defendant Shipt, Inc. ("Shipt" or "Defendant"), states as follows:

### I.       NATURE OF ACTION

1.       This action is brought as a collective under the Fair Labor Standards Act, 29 U.S.C. § 16(b) (the "FLSA") and as a Rule 23 class action for violations of the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq*. and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*

### II.      JURISDICTION AND VENUE

2.       This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 16(b) of the FLSA, 29 U.S.C. § 216(b).

3.       This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's Illinois wage and hour and associated claims because the claims originate from a common nucleus of operative facts.

4.       This Court also has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

### III.     THE PARTIES

5.       Plaintiff is a resident of Aurora, Illinois. Defendant employed Plaintiff as a Shopper from approximately April 9, 2019 through August 18, 2019. During the course of her employment with Defendant, Plaintiff incurred

expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which she was not reimbursed. Plaintiff also worked in excess of forty hours per week but was not compensated at the required overtime wage rates. Plaintiff regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours she worked.

6.     Defendant Shipt, Inc. is a Delaware corporation with its principal place of business in Birmingham, Alabama. Shipt maintains substantial ongoing business operations throughout the United States and is in the business of providing online grocery shopping and delivery service.

## IV.     STATUTORY VIOLATIONS

### Collective Action Under the FLSA

7.     Pursuant to the FLSA, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiff as an opt-in representative or collective action, on behalf of herself and others similarly situated who have been damaged by Defendant's failure to comply with 29 U.S.C. § 201, *et seq*.

### Illinois Wage Payment and Collection Act

8.     Pursuant to the IWPCA, 820 ILCS §115/1, *et seq*., Count II of this action is brought by Plaintiff to recover final compensation of wages and other compensation earned from the Defendant for herself and others similarly situated. The claims asserted by Plaintiff herein under the IWPCA are proper for certification under Federal Rule of Civil Procedure 23.

### Illinois Minimum Wage Law

3

9.     Pursuant to the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq*., Count III of this action is brought by Plaintiff to recover unpaid back wages for herself and others similarly situated. The claims asserted by Plaintiff herein under the IMWL are proper for certification under Rule 23.

## V.     <u>INTRODUCTION</u>

10.     Plaintiff brings this action individually and on behalf of the proposed classes defined below against Shipt, which Plaintiff contends misclassified her and members of the putative classes as independent contractors.

11.     Shipt is a shopping and delivery service company whose workers shop for groceries and other items primarily from Target and Meijer stores.

12.     Shipt is a subsidiary of Target Corporation and the bulk of the shopping that its Shoppers do is through Target stores.

13.     Plaintiff and putative class members worked or continue to work as personal shoppers, drivers, and delivery persons for Shipt (collectively, "Shoppers"). Shoppers are dispatched through a mobile phone application to shop, purchase, and deliver groceries and other items to customers at their homes and businesses.

14.     In practice, Shipt controlled the "when," "where," and "how" the Shoppers' job was performed. The work performed by Plaintiff and the putative class members was within the usual course of Shipt's

business of grocery delivery and they were completely dependent on the Shipt platform to perform grocery delivery work. Under the applicable test for employment under the FLSA and the Illinois Minimum Wage Law, Shoppers are presumptive employees entitled to labor law protections such as minimum wage guarantees, overtime compensation, workers' compensation insurance coverage, payroll tax contributions, and other employee benefits. By misclassifying Shoppers as independent contractors, however, Shipt denied them these rights, shifting all risk to the Shoppers and saving itself millions in overhead in the process.

15.  Defendant intentionally misrepresented to Plaintiff and putative class members they were independent contractors and therefore not entitled to wages for non-productive time, reimbursement for expenses incurred in relation to their employment, workers' compensation insurance benefits, and tax benefits enjoyed by employees.

16.  Plaintiff asserts claims pursuant to the FLSA, 29 U.S.C. § 201, *et seq*. individually and on behalf of the following class of individuals (the "FLSA Class"):

> **All individuals who performed personal shopping, delivery services, or both for Shipt from three years prior to the filing of the Complaint through final judgment.**

17.  Plaintiff asserts claims pursuant to the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.*, individually and on behalf of the following class of individuals (the "IMWL Class"):

> **All individuals who performed personal shopping, delivery services, or both for Shipt in the State of Illinois from three years prior to the filing of the Complaint through final judgment.**

18.     Plaintiff asserts claims pursuant the IWPCA, 820 ILCS 115/1, *et seq.*, individually and on behalf of the following class of individuals (the "IWPCA Class"):

> **All individuals who performed personal shopping, delivery services, or both for Shipt in the State of Illinois from ten years prior to the filing of the Complaint through final judgment.**

19.     Plaintiff seeks actual and/or compensatory damages, civil penalties, restitution, equitable relief, costs and expenses of litigation, including attorneys' fees and costs, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances.

## VI.     FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

**Shipt's Business Model Deprived Plaintiff and the Putative Classes of the Benefits and Protections of Employment**

20.     Shipt provides grocery delivery services to customers in cities throughout the country via an on-demand dispatch system.

21.     Shipt offers customers the ability to purchase groceries from specified stores on a mobile phone application or over the Internet and have them delivered by "personal shoppers" within one or two hours.

22.     Shipt operates by hiring and employing an extensive workforce of

individuals who perform the functions of shopping for and purchasing the groceries ordered by the customers and delivering said groceries to the customers. The shoppers' and drivers' services are fully integrated into Shipt's business, and without them, Shipt's business would not exist.

23.     However, at all relevant times, Defendant treated the Shoppers like independent contractors to the detriment of Plaintiff and putative class members in various manners including, but not limited to, requiring Shoppers to use their own vehicles to make deliveries, pay for driving-related expenses, failing to provide liability insurance for the operation of Shoppers' motor vehicles, failing to provide workers' compensation insurance, and requiring Shoppers to pay increased tax rates mandatory for independent contractors.

24.     Additionally, Defendant required Shoppers to use their own smart phones and data from their personal cell phone service plans in order to receive and carry out work orders.

25.     Defendant voluntarily and knowingly misclassified Plaintiff and other Shipt shoppers as independent contractors for the purpose of avoiding the significant responsibilities associated with the employer/employee relationship, including, *inter alia*, the payment of wages for non-productive time, payment of wages for all hours worked and at least the minimum wage, overtime compensation, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

26.     At all relevant times, Defendant issued Plaintiff and those similarly situated a Form 1099, indicating that they were independent contractors and were not Defendant's employees.

27.     At all times during their employment with Defendant, Plaintiff and those similarly situated were misclassified as independent contractors by Defendant, were in fact employees of Defendant, and suffered actual economic harm as a consequence of this misclassification.

**Shipt Extensively Controlled all Aspects of Plaintiff's Job**

28.     Despite Shipt's explicit and implicit classification of Plaintiff and members of the putative classes as independent contractors, they were in fact employees of Defendant. Shoppers are required to follow a litany of detailed requirements imposed on them by Shipt and are graded and subject to termination based on their failure to adhere to these requirements.

29.     At all relevant times, Shipt exerted control over Shoppers in a manner consistent with an employer-employee relationship including, but not limited to, generating the work orders for the Shoppers; controlling their wages; enforcing behavioral codes of conduct; controlling the means, manner, and method by which they perform their work; and controlling the conditions of employment. Shipt directed Shoppers precisely when and where they were to collect and deliver groceries to Shipt customers and how to interact with Shipt customers and also had the right to terminate them from Shipt's employment at

Shipt's discretion.

30.     When working for Shipt, Shoppers were expected to hold themselves out as Shipt employees and were provided lanyards with the Shipt logo and a Shipt bag and shirt to identify themselves to customers as Shipt Shoppers.

31.     Shipt trained and directed Plaintiff and the putative class on how to evaluate and select produce and how to bag items.

32.     Plaintiff and putative class members were to follow Shipt protocol if an item was unavailable. The Shipt App directed Shoppers to choose specific replacement items. If these items were unavailable, Shipt directed Shoppers to try to match the quantity ordered and prioritize certain features.

33.     Shipt also controlled how Shoppers were to interact with customers. Shipt provided instructions on what Shoppers were to say when leaving voicemails for customers, what to say when on the phone with a customer to add a substitute item for an unavailable item, and what to say when delivering the groceries to the customer.

34.     Additionally, Shoppers were required to accept every job that Shipt sent to their smartphone within a set time. After acknowledging an order, Shoppers were required to start picking the groceries within a certain timeframe. If a Shopper repeatedly did not meet Shipt's expectations as to the time within which to commence picking, Shipt would schedule them for fewer shifts or not at all.

**Shipt Dictated all the Particulars**
**of the Work of Shoppers Through its Mobile Application**

35.　At all relevant times, Shoppers, including Plaintiff, were assigned their work by Shipt via a mobile phone application ("Shipt App") on a daily basis. The only way to perform any work for Shipt was through the Shipt App, which could only be used as determined by Shipt.

36.　As a result, Shoppers did not know where they were to be assigned to work, the type of deliveries they were to be performing, or the length of time any given assignment was expected to require until they received Shipt's work order notification. Shoppers were not permitted to collect the materials from locations of their choosing or deliver them at a time or a price negotiated by Shoppers.

37.　Shipt monitored and managed Plaintiff's job performance (and those in the putative classes) down to the minute. Shoppers were required to notify Shipt, by way of the Shipt App, when they were starting to shop for an order, when the purchase was complete, when they were starting the delivery process, and when delivery was complete.

38.　Shipt used a grading system to evaluate Shoppers and Shipt told its Shoppers that they were expected to maintain minimum accuracy scores in order to remain employed by Shipt.

39.　Shipt also monitored and tracked the location and speed of Shoppers while they were completing orders and communicated directly with

10

Shoppers via text message or phone call if they deviated from the enumerated protocols or timing requirements to inquire why they were running late, even if only by a minute or two. Shipt also sent text messages requesting that Shoppers provide minute-by-minute updates on the delivery status of their assigned orders.

40.     If Shoppers did not comply with Shipt's work requirements, they were subject to reduced effective pay, discipline, and "deactivation" - a tech industry euphemism for being fired. If Shoppers' grades/scores were outside Shipt's expectations, Shipt would also assign them fewer or smaller batches and fewer or shorter shifts.

41.     Shipt communicated its expectations, protocols, and rules to Plaintiff and other Shoppers via regular e-newsletters, communications through the Shopper App, training manuals, videos, emails, and phone calls. Shipt managers also sent text messages to Shoppers about their performance of deliveries, messages about their shifts, directions on how to shop, and other managerial issues.

42.     At times, the Shipt App would suffer from systemic malfunctions in which the App would crash, freeze, glitch, or in some way prevent Shoppers from continuing their work.

43.     When the App malfunctioned, it would take as long as five minutes to restart, reset, or reinstall the App to bring it back to full functionality.

44.    For the duration of the App's malfunction, Shoppers were unable to continue their shift. In fact, Shipt penalized Shoppers for the delay they suffered due to malfunctioning of the Shipt App through negative performance evaluations, disciplinary action, termination, and decreased wages.

45.    Upon information and belief, Shipt knew that the Shipt App malfunctions were widespread and systemic, rather than isolated to a particular Shopper. Nevertheless, Shipt never adequately fixed the problem. Instead, Shipt's lack of ordinary care in maintain its platform directly resulted in economic loss to Plaintiff and other Shoppers.

**Shipt Controlled Shoppers' Wages and Tips**

46.    Shipt exerted sole control over Shoppers' wages. At all relevant times, Shoppers were paid in a manner completely dependent on the nature of the deliveries they made, including the quantity of items Shoppers were required to collect and deliver under each individual work order.

47.    Shipt unilaterally modifies the compensation structure applicable to Shoppers without any negotiation or consent on the part of the Shoppers.

48.    At all relevant times, Shipt paid Shoppers via direct deposit. A wage statement was provided on the Shipt App, but, at all relevant times, the Shipt App omitted the Shoppers' hours worked or the hourly rate paid. Shipt App also did not provide information as to their piece rate compensation or the number of piece rate units earned. Plaintiff had no means of verifying they were being paid

correctly.

49. At all relevant times, Shipt customers were able to tip their Shopper via the Shipt App.

50. Shipt credited customer tips against wages in order to supplement Shoppers' wages. Since customers included gratuity when they made the order, Shipt used the gratuity as a part of its calculation to determine an individual Shopper's rate of pay for that order. As a result, some portion of customer gratuity was used by Shipt to pay Shoppers their wages for each order. By preventing Shoppers from seeing how much the customer paid for their order and by withholding accurate wage statements, Shipt deprived them of their ability to combat the unlawful tip crediting practice.

**Shipt Controlled When and How Long Shoppers Worked**

51. At all relevant times, Shoppers were was required to provide windows of availability to Shipt on a weekly basis. Shipt then assigned them a schedule of shifts for the upcoming week.

52. At the start of an assigned shift, Shoppers were required to report to a certain territory specified by the Shipt App. Shoppers were not paid for the time that they were on shift but had not yet been assigned to shop.

53. If Shoppers did not report to their territory at the start of an assigned shift, reported late to a shift, or cancelled a shift within 24 hours, it could result in the Shopper being assigned less or shorter shifts or being

deactivated.

**Shipt Denied Shoppers Minimum Wage and Overtime**

54.    At all relevant times, Shoppers were paid in a manner completely dependent on the nature of the deliveries they made, including the quantity of items Shoppers were required to collect and deliver under each individual work order.

55.    Shoppers were required to make themselves available to perform work within a predetermined range of time each day, but were not compensated in a manner that guaranteed they were compensated at or above the applicable minimum wage during those hours. During non-productive time, or time during which Shoppers were required to be on shift in a specific location but were not yet assigned a batch, Shoppers were not compensated in any manner whatsoever.

56.    Shoppers could sign up for shifts of up to 12 hours in duration. If, at the end of a shift, Shipt was experiencing high volumes of orders, Shoppers could extend their shifts. Plaintiff sometimes worked up to 60 or more hours per week (and alleged the same was true of other Shppers). Despite these long hours, Plaintiff and putative class members were not compensated at the required overtime rates for overtime hours.

57.    At no time during Plaintiff's employment did Defendant provide Plaintiff with any written or electronic wage statement showing hours worked,

gross and net wages earned, hourly rates, or federal or state deductions. Plaintiff alleges that the same is true of the putative class members.

**Shipt Failed to Reimburse Shoppers for Business-Related Expenses**

58.    At all relevant times, Shoppers were required to bear many of the expenses of their employment, including expenses for their vehicles, gas, and other expenses. In fact, Shipt provided no reimbursement for Shoppers' mileage.  At times, these expenses caused Shoppers' wages to fall below minimum wage.

59.    Illinois state employment law under Chapter 820 of the Illinois Compiled Statutes requires employers to reimburse employees for such expenses, which are for the benefit of the employer and necessary for the employees to perform their jobs.

60.    At all relevant times, Defendant required Shoppers to use and maintain insured and licensed vehicles as a condition of their work. Shoppers were required to pay all expenses related to the use and maintenance of their vehicles, including expenses related to liability insurance, fuel, routine maintenance, and the upkeep of their vehicles' appearance. Shoppers often incurred costs related to parking, such as parking meter payments and parking tickets, which were necessitated by Defendant's directives to its drivers. Defendant also required Shoppers to use their own smart phones and data from their personal cell phone service plans as a condition of their work in order to

receive and carry out work orders. Defendant did not reimburse Shoppers for mileage driven or any other work-related expenses in any manner.

61.    At all relevant times, Defendant did not provide Shoppers with workers' compensation insurance. Shoppers injured in the course and scope of their employment with Defendant were left to rely on either their own private medical insurance or make direct payments for medical treatment required to pay increased state and federal taxes at the rate of independent contractors despite the fact they were employees.

**Shipt's Willful and Reckless Violation of Labor Laws**

62.  Shipt willfully violated the FLSA and Illinois state employment laws. Shipt knew that Shoppers should have been treated as employees, but chose to misclassify them as independent contractors. Shipt's motivation in misclassifying Plaintiff and the other Shoppers as independent contractors was to avoid the additional costs and financial responsibilities associated with an employer/employee relationship, including, inter alia, the payment of minimum wage and overtime, the payment of wages for non-productive time, expense reimbursements, payment of state and federal taxes, and other benefits.

63.  Shipt also specifically knew or recklessly disregarded that it was violating federal and Illinois state labor laws by not paying Shoppers minimum wage for all hours worked and overtime for hours over 40 worked

in a week. Shipt knew of the Labor Code, the financial obligations it imposes on employers, and its applicability to Shipt with respect to Plaintiff and other Shoppers. Again, it was Shipt's knowledge of these financial obligations and its desire to circumvent them that motivated Shipt to willfully misclassify Plaintiff and the other Shoppers.

64. Shipt knew Shoppers were working more than 40 hours a week and that Shipt was not paying Shoppers overtime wages. Shipt calculated and tracked the average hourly wage it paid Shoppers and could easily see when Shoppers' effective hourly rate fell below the applicable minimum wage. Shipt also knew that there were hours during Shoppers' shifts when they were not assigned orders and that they were not paid for those hours.

65. As alleged herein, Shipt maintained extensive and pervasive control over Plaintiff and the other Shoppers' conduct, means and manner of work, appearance, actions, wages, and hours. Shipt had detailed knowledge of and control over hours Shoppers were working on a daily and weekly basis, including when Shoppers worked over 40 hours per week, and how many orders Shoppers were assigned and when.

66. Shipt also knew how much it was paying Shoppers and that its method of compensation (i.e., on a piece rate/commission basis) gave no consideration to whether Shoppers worked more than 40 hours in a given week or whether there were hours during Shopper's shifts when they were not

assigned orders. Indeed, it was Shipt's practice to deny that overtime wages were due to be paid to Shoppers for work in excess of 40 hours per week and to deny that any wages were due to be paid for non-productive hours even though Shipt knew that, under any set of circumstances or facts, Shoppers were entitled to be paid at least minimum wage for each hour that they worked.

67.     Further compounding its willful actions is the fact that Shipt never provided Shoppers with any written or electronic wage statement that showed their hours worked, hourly rates, piece rate information, and federal and state deductions or wage statements that accurately reported their gross and net wages.

68.     Shipt chose to classify Shoppers as independent contractors to save money.

## VII.   RULE 23 ALLEGATIONS

### Numerosity (Rule 23(a)(1))

69.     The potential quantity of members of the proposed IWPCA and IMWL Classes (collective herein the "Illinois Classes") as defined is so numerous that joinder of all members would be unfeasible and impractical. Plaintiff is informed and believes that the total number of current and formerly employed members of the Illinois Classes number in the hundreds. The quantity and identity of such membership is readily ascertainable via inspection of Shipt's employment and payroll records.

### Existence of Common Questions of Law and Fact (Rule 23(a)(2))

70.     There are common questions of law and fact as to the members of the
Illinois Classes which predominate over questions affecting only individual
members which include, but are not limited to, the following:

    a.  Whether Shipt failed to keep accurate records of all hours worked
and wages earned by members of the Illinois Classes;

    b.  Whether Shipt failed to pay members of the Illinois Classes proper
minimum wages and overtime in violation of the IMWL;

    c.  Whether Shipt has maintained a policy that results in depriving the
Illinois Class members of wages due in violation of the IWPCA;

    d.  Whether Shipt maintains a policy resulting in unauthorized and
improper deductions from Illinois Class members' wages in
violation of the IWPCA;

    e.  Whether the members of the Illinois Classes are entitled to
compensatory damages, and if so, the means of measuring such
damages;

    f.  Whether the members of the Illinois Classes are entitled to injunctive
relief;

    g.  Whether the members of the Illinois Classes are entitled to
restitution; and

    h.  Whether Defendant is liable to members of the Illinois Classes for
attorneys' fees and costs.

## Typicality (Rule 23(a)(3))

71.     The claims of the Plaintiff are typical of the claims of all members of the Illinois Classes she seeks to represent because all members of the Illinois Classes sustained injuries and damages arising out of Defendant's common scheme to maximize profits by skimming wages.

## Adequacy (Rule 23(a)(4))

72.     Plaintiff is an adequate representative of the proposed Illinois Classes she seeks to represent because she will fairly protect the interests of the members of the Illinois Classes, she has no interests antagonistic to the Illinois Class members, and she will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type.

## Injunctive and Declaratory Relief (Rule 23(b)(2))

73.     Injunctive relief is appropriate pursuant to Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the members of the Illinois Classes so that final injunctive relief as requested herein is appropriate respecting the Illinois Classes as a whole.

## Predominance and Superiority of Class Action (Rule 23(b)(3))

74.     The nature of this action and the nature of the laws available to members of the Illinois Classes make the use of the class action format particularly efficient and the appropriate procedure to afford relief to them for the wrongs alleged herein, for the

following reasons:

a. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation;

b. This case involves a large number of individual class members with many relatively small claims. If each individual member was required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual class member with its vastly superior financial and legal resources;

c. Requiring each individual member to pursue an individual remedy would also discourage the assertion of lawful claims by class members, who would be disinclined to pursue action against Defendant because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

d. Proof of a common business practice to maximize profits through wage theft will provide the common proof to establish liability against Defendant;

e. Absent class treatment, the prosecution of separate actions by the individual members of the Illinois Classes, even if possible, would likely create:

   i. a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

   ii. a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

   iii. inconsistent or varying verdicts or adjudications; and

   iv. potentially incompatible standards of conduct for Defendant.

f. The claims of the individual members of the Illinois Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attendant thereto;

75. Finally, adjudicating this action on a class basis is appropriate because liability turns on Defendant's own uniform and systematic scheme to maximize profits by depriving its employees of wages. Class-wide liability can be determined through manageable devices of common proof such as statistical random sampling, survey evidence based on scientific principles, representative testimony, documentary evidence and Defendant's common policies and practices. Once liability is determined, the damages suffered by each member can also be determined by the same common proof.

76.    Plaintiff does not contemplate class notice if the Illinois Classes are certified under Rule 23(b)(2), which does not require notice, and notice to the putative classes may be accomplished through publication, or other forms of distribution, if necessary, if the classes are certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required. Plaintiff will, if notice is so required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

77.    Plaintiff intends to send notice to all members of the Illinois Classes to the extent required by Rule 23.

## VIII. <u>LEGAL CLAIMS</u>

### <u>COUNT I</u>
### <u>NATIONWIDE COLLECTIVE ACTION VIOLATION OF FAIR LABOR STANDARDS ACT</u>

78.    Plaintiff hereby realleges and incorporate by reference all paragraphs above as if set forth in detail herein.

79.    Plaintiff brings this cause of action on behalf of herself and all other Shipt Shoppers who have worked for or on behalf of the Defendant anywhere in the United States any time between three years prior to the filing of this suit and the date of final judgment in this matter.

80.    Plaintiff brings this count under 29 U.S.C. § 216(b) of the FLSA. Plaintiff and other Shipt Shoppers are similarly situated in that they are all subject to Shipt's common plan or practice of misclassifying Shoppers as

independent contractors, not paying them overtime for all hours worked beyond 40 in a given week, not ensuring they receive at least the federal minimum wage for all hours worked and not reimbursing for expenses.

81.    At all relevant times, Defendant has been the employer of Plaintiff and the Shoppers and has been engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA. Defendant's annual operating revenues exceed $500,000.

82.    Plaintiff consents to sue for violations of the FLSA pursuant to 29 U.S.C. § 216(b).  Plaintiff's written consent is attached hereto as Exhibit A.

83.    The FLSA, 29 U.S.C. § 201, *et seq*., requires employers, such as Defendant, to compensate their non-exempt employees, such as Plaintiff and the other Shoppers, at a rate of not less than the minimum wage for all hours worked. The FLSA further requires employers to compensate employees at or above one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a single week. In addition, the FLSA requires employers to record, report, and preserve records of hours worked by employees.

84.    Defendant, pursuant to uniform policies and practices, failed to do each of the above in violation of the FLSA, including 29 U.S.C. §§ 207(a)(1) and 215(a).

85.    The FLSA mandates that an employee's wages must be "free and

clear" of "kickbacks," and requires employers to reimburse employees for such expenses, which are for the benefit of the employer, when failing to do so would cause their wages to drop below the federal minimum wage.

86.     Plaintiff and other Shoppers were required to bear many expenses related to their employment that were for the benefit of Defendant, including expenses related to the maintenance of their vehicles, gas, cell phone bills, and other expenses. Defendant did not reimburse Shoppers for these expenses. At times, these expenses caused Shoppers' wages to fall below minimum wage.

87.     Defendant has failed to record, report, or preserve records of hours worked by Shoppers sufficient to determine wages, hours, and other conditions and practices of employment, in violation of the FLSA, including 29 U.S.C. §§ 211(c) and 215(a).

88.     As alleged above, Shipt credited customer tips against wages in order to supplement Shoppers' wages. Since customers included gratuity when they made the order, Shipt used the gratuity as a part of its calculation to determine an individual Shopper's rate of pay for that order. As a result, some portion of customer gratuity was used by Shipt to pay Shoppers their wages for each order.

89.     Defendant's practice of crediting tips against wages constitutes an illegal tip pool in violation of the FLSA, including 29 U.S.C. § 203(m).

90.     The conduct described herein constitutes willful violations of

the FLSA within the meaning of 29 U.S.C. § 255(a).

91.    Plaintiff seeks recovery of attorneys' fees and costs to be paid by Defendant, as provided under 29 U.S.C. § 216(b).

92.    Plaintiff and the Shoppers have incurred economic damages as a direct and proximate consequence of the acts of Defendant alleged herein. Plaintiff seeks, on behalf of herself and other Shoppers, damages to include unpaid compensation, expenses, unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and other such legal and equitable relief as the Court deems just and proper.

93.    This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. § 216(b).

94.    Plaintiff reserves the right to amend the FLSA Class definition if discovery or further investigation demonstrate that the FLSA Class should be expanded or otherwise modified.

95.    Plaintiff and other members of the FLSA Class have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

96.    The members of the FLSA Class are so numerous that joinder of all members would be impracticable.

97.    There are questions of law and fact common to the members of the

FLSA Class that predominate over any questions affecting only individual members, including:

a) Whether FLSA Class members have been required to follow uniform procedures and policies regarding their work for Shipt;

b) Whether the work performed by FLSA Class members—providing grocery shopping and delivery service to customers—is within Shipt's usual course of business, and whether such service is fully integrated into Shipt's business;

c) Whether FLSA Class members independently engaged in the business of grocery delivery outside of their work for Shipt;

d) Whether Defendant failed to pay FLSA Class members for all hours of work performed in violation of Illinois law;

e) Whether Defendant failed to reimburse FLSA Class members for expenses incurred during the course of their employment;

f) Whether Defendant' conduct violates the Fair Labor Standards Act and Illinois state employment law; and

g) Whether, as a result of Defendant' misconduct, Class members are entitled to damages, restitution, equitable relief or other damages and relief, and, if so, the amount and nature of such relief.

98.     Plaintiff is a member of the FLSA Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

99.     Plaintiff's claims are typical of the claims of the members of the FLSA Class. Plaintiff has no interests antagonistic to those of the FLSA Class and is not subject to any unique defenses.

100.   Plaintiff will fairly and adequately represent and protect the interests of all members of the FLSA Class and has retained attorneys experience in class and collective actions and complex litigation.

## COUNT II

## WILLFUL VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT

101.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein

102.   Plaintiff brings Count II individually and on behalf of the Rule 23 IWPCA Class.

103.   Defendant, and each of them, have violated and continue to violate Chapter 820 of Illinois Compiled Statutes by willfully refusing to pay wages – including the benefits described above – due and payable to Plaintiff and the other Shoppers. As more fully set forth above, Shoppers not compensated for non-productive hours worked. Additionally, Shoppers work and have worked well in excess of 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week. These unpaid hours include overtime that should have been paid.

104.   Equally, Defendant denied that any wages due for non-productive work and work in excess of forty hours per week were due to be paid to Shoppers even though each Defendant knew that under any set of circumstances or facts, they were entitled to be paid for each hour that they worked. Defendant has falsely denied and refused and continues to deny falsely and refuse payment for purposes of securing a material economic benefit and with the intent to annoy, harass, oppress, hinder, and defraud Shoppers.

105.   Moreover, Defendant failed to pay Shoppers gratuities paid by customers for their service and instead used them as a credit against their wages. Since customers included gratuity when they made the order, Shipt used the gratuity as a part of its calculation to determine an individual Shopper's rate of pay for that order. As a result, some portion of customer gratuity was used by Shipt to pay Shoppers their wages for each order. By preventing Shoppers from seeing how much the customer paid for their order and by withholding accurate wage statements, Shipt deprived them of their ability to combat the unlawful tip crediting practice.

106.   Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action, for the unpaid balance of the amount of unpaid wages, including interest thereon, and reasonable attorneys' fees and costs of suit, as well as the assessment of any

other civil and statutory penalties against Defendant.

107.   Throughout their employment, Shoppers incurred expenditures or losses related to their employment and in direct consequence of the discharge of their duties as Defendant' employees, or of their obedience to the directions of Defendant.

108.   Defendant failed to reimburse or indemnify Shoppers for these expenditures or losses. Items and services that Shoppers were required to purchase include, but are not limited to gas, automotive insurance, other vehicle maintenance services, parking privileges, smartphones, and smartphone data packages.

109.   By the conduct described herein, Defendant has violated the IWPA.

110.   As a result of Defendant's violations, Shoppers are entitled to reimbursement of the incurred expenses, as well as attorneys' fees and costs, interest, liquidated damages, and all civil penalties available as a result of such conduct.

## COUNT III

## VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

111.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

112.   Plaintiff brings Count III individually and on behalf of the Rule 23

IMWL Class.

113.   Shoppers have been and are expected to regularly work in excess of 40 hours per week. Shoppers have regularly worked in excess of 40 hours per week. They also were not paid at least minimum wage for all hours worked.

114.   At all relevant times, Defendant failed to pay Shoppers and all persons similarly situated wages when due, as required by Chapter 820 of Illinois Compiled Statutes §§ 115/3, 105/4a, 105/12, and 145/1.

115.   Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Shoppers for the unpaid balance of the amount of minimum wages and overtime due, including interest thereon, liquidated damages, reasonable attorneys' fees and costs of suit, as well as the assessment of any other civil and statutory penalties against Defendant.

116.   Defendant, pursuant to uniform policies and practices, failed to compensate Shoppers at a rate not less than the minimum wage and applicable overtime rate for all hours worked in violation of Chapter 820 of the Illinois Compiled Statutes.

117.   As a result of Defendant' conduct, Plaintiff and the IMWL Class are entitled to all monetary and other damages permitted under Chapter 820 of the Illinois Compiled Statutes including the unpaid balance of the amount

of minimum wage and overtime, including interest thereon, liquidated damages, reasonable attorneys' fees and costs of suit, liquidated damages, as well as the assessment of any other civil and statutory penalties against Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment, on behalf of herself and the putative classes, against Defendant as follows:

A. An order certifying this case as a Collective and Class Action and appointing Plaintiff and her counsel to represent the FLSA Class, the IWPCA Class, and the IMWL Class;

B. For a declaratory judgment that the practices complained of herein are unlawful under appropriate state law, and that Plaintiff and the putative class members are employees, and not independent contractors;

C. For actual and compensatory damages according to proof pursuant to the FLSA and the Illinois Compiled statutes,

D. For restitution and disgorgement to the extent permitted by applicable law;

E. For an order enjoining Defendant from continuing to engage in the conduct described herein;

F. For liquidated damages as provided by applicable law;

G. For civil and statutory penalties available under applicable law;

H. For pre-judgment and post-judgment interest;

I.  For an award of attorneys' fees, costs and expenses as authorized by

applicable law;

J.  For punitive damages according to proof; and

K. For such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.


DATED: October 1, 2020                    Respectfully submitted,

                                          *s/ Michael L. Fradin*
                                          MICHAEL L. FRADIN
                                          *mike@fradinlaw.com*
                                          LAW OFFICE OF MICHAEL L. FRADIN
                                          8401 Crawford Ave. Ste. 104
                                          Skokie, IL 60076
                                          Telephone: 847/986-5889
                                          Facsimile: 847/673-1228


                                          *s/ Jerusalem F. Beligan*
                                          Jerusalem F. Beligan

                                          BRIAN D. CHASE (*pro hac vice pending*)
                                          bchase@bisnarchase.com
                                          JERUSALEM F. BELIGAN (*pro hac vice
                                          pending*)
                                          jbeligan@bisnarchase.com
                                          IAN SILVERS (*pro hac vice pending*)
                                          isilvers@bisnarchase.com
                                          BISNAR|CHASE LLP
                                          1301 Dove Street, Suite 120
                                          Newport Beach, California 92660
                                          Telephone:  949/752-2999
                                          Facsimile:   949/752-2777