# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Samantha Young, on behalf of herself and all others similarly situated, known and unknown,<br><br>        Plaintiff,<br><br>   v.<br><br>Shipt, Inc.,<br><br>        Defendant. | Civil Action No. 1:20-cv-05858<br><br>Honorable Edmond E. Chang<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STAY AND COMPEL ARBITRATION OR TO <u>DISMISS FOR IMPROPER VENUE</u>**

# TABLE OF CONTENTS

I. INTRODUCTION..................................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND..........................................................1

    A. Factual Background…….............................................................................................1

        1. Shipt is a delivery service provider for its nationwide retail partners............1

        2. Shipt's delivery service drivers transport goods that originate from outside Illinois, and for certain goods, outside the country…....................................2

        3. The contract between Shipt and its delivery service drivers..........................3

    B. Procedural Background................................................................................................4

III. CONTRARY TO ITS CONTENTION, *THIS* COURT—NOT AN ARBITRATOR—DECIDES THE THRESHOLD QUESTION OF WHETHER SHIPT'S DELIVERY SERVICE DRIVERS FALL WITHIN § 1'S EXEMPTION................................................4

IV. SHIPT'S DELIVERY SERVICE DRIVERS ARE TRANSPORTATION WORKERS WHOSE "CONTRACTS OF EMPLOYMENT" ARE EXEMPT FROM THE FAA..........5

    A. "Contracts of employment" exist between Shipt and its delivery service providers………………………………………………………………..….........6

    B. Shipt's delivery service drivers are "[transportation] workers engaged in foreign or interstate commerce"………......................................................................................6

        1. The meaning of "class of workers engaged in foreign or interstate commerce" as interpreted by *Waithaka*, *Grubhub* and *Rittman*....................7

        2. Application of § 1 to Shipt's delivery service drivers with *Waithaka*, *Grubhub* and *Rittman* as the legal backdrop……..........................................9

V. NEITHER DELAWARE NOR ILLINOIS LAW CAN BE APPLIED TO SAVE SHIPT'S MOTION................................................................................................................12

VI. LIMITED DISCOVERY IS WARRANTED IF THE CURRENT EVIDENCE IS INSUFFICIENT FOR THE COURT TO MAKE AN INFORMED DECISION ON WHETHER SHIPT'S DELIVER SERVICE DRIVERS FALL WITHIN § 1'S EXEMPTION......................................................................................................................12

VII. CONCLUSION...................................................................................................................13

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Cole v. Burns Int'l Security Servs.*,

    105 F.3d 1465, 1471 (C.A.D.C. 1997)..............................................................................7

*Circuit City Stores, Inc. v. Adams*,

    532 U.S. 105 (2001)……......................................................................................6, 8, 9, 10

*Gulf Oil Corp. v. Copp Paving Co.*,

    419 U.S. 186 (1974)..........................................................................................................7

*New Prime Inc. v. Oliveira*,

    139 S. Ct. 532 (2019)....................................................................................4, 5, 6, 8, 10

*Renard v. Ameriprise Fin. Servs., Inc.*,

    778 F.3d 563 (7th Cir. 2015)……....................................................................................11

*Rittmann v. Amazon.com, Inc.*,

    971 F.3d 904 (9th Cir. 2020)……......................................................................5, 10, 11

*Singh v. Uber Technologies Inc.*,

    939 F.3d 210 (3d Cir. 2019)..............................................................................................4

*U.S. v. American Building Maintenance Industries*,

    422 U.S. 271 (1975)………..............................................................................................7

*Waithaka v. Amazon.com, Inc.*,

    966 F.3d 10 (1st Cir. 2020)…..............................................................5, 6, 7, 8, 9, 10, 11

*Wallace v. Grubhub Holdings, Inc.*,

    970 F.3d 798 (7th Cir. 2020)……..........................................................................5, 6, 8, 9

**Statutes**

Federal Arbitration Act, 9 U.S.C §§ 1-4.............................................................1, 4, 5, 6, 7, 10, 11

Plaintiff Samantha Young (Plaintiff) submits this opposition to defendant Shipt Inc.'s (Shipt) Motion to Stay and Compel Arbitration or to Dismiss for Improper Venue (Motion).

## I. INTRODUCTION

Boiled down, the primary issue presented by the Motion is whether Shipt's delivery service drivers belong to a "class of [transportation] workers engaged in foreign or interstate commerce," 9 U.S.C § 1, and therefore exempt from the Federal Arbitration Act's (FAA) enforcement provisions, 9 U.S.C. §§ 2-4. If they do fall within the scope of § 1's exemption, then the FAA does not apply and it cannot be used as a vehicle to compel Plaintiff to arbitration. For § 1's exemption to apply, only two requirements must be satisfied: first, there must be a "contract[] of employment" between Shipt and its delivery service drivers; and second, the delivery service drivers must belong to a class of workers engaged in the movement of goods that have either crossed interstate lines or been shipped from outside the continental United States. Because each requirement has been met, Shipt's delivery service drivers fall within § 1's exemption and therefore Plaintiff cannot be compelled to arbitration under the FAA. And because the enforceability of the Arbitration Agreement is governed solely by the FAA, there is no other vehicle by which Shipt can compel Plaintiff to arbitration. Accordingly, the Motion must be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

#### 1. Shipt is a delivery service provider for its nationwide retail partners.

Shipt is an internet company that created an online and mobile application, the Shipt Marketplace Application (Shipt App), which allows consumers to order goods from one or more of Shipt's nationwide retail partners through the Shipt App. *See* Declaration of April Hutchins (Hutchins Decl) ¶¶ 3, 5; *see also* Ex. C to Hutchins Decl. at p. 2 (The Shipt App "permits [consumers] to place orders through [the app] to generate an engagement."); Motion at p. 8

1

(Consumers "use Shipt's platform to view and order goods from [its retail partners]."").[1] Simply put, the Shipt App provides "an online platform for the sale of goods from [one or more of Shipt's] major nationwide retailers[.]" Motion at p. 13 (citing Hutchins Decl. ¶¶ 3–6).

These major nationwide retailers "includ[e] Target (retail company), CVS (retail and healthcare company), Ralphs (supermarket chain), Smart & Final (supermarket chain), Petco (pet supply company), Meijer (supermarket chain), and Gelson's (supermarket chain)." Hutchins Decl. ¶ 6. In addition to these major nationwide retailers, Shipt is also partnered with Bed Bath & Beyond, buybuy BABY, and Office Depot & Office Max. *See* Declaration of Samantha Young (Young Decl.) ¶ 3. Despite Shipt's attempt to paint the activities of its delivery service drivers as "local," there is nothing local about the nature of its business. Indeed, Shipt touts itself as a company that "operates across the country, uses infrastructure in various states, advertises online, and communicates with [its retailers and consumers] by interstate mail and email." Motion at p. 13 (citing Hutchins Decl. ¶¶ 2, 9–11).

But facilitating the online sale of goods between consumers and its major nationwide retailers is just one aspect of its business because, at the end of the day, those goods do not reach their real and ultimate destination until they are in the hands of the consumers who purchased them. So, to complete these transactions, Shipt contracts with local "delivery service drivers … to [provide] the same-day delivery of [the] items [or goods] ordered through th[e]" Shipt App. Hutchins Decl., Ex. C at p. 2. When delivery service drivers are assigned an engagement, those drivers are required to pick up the goods from Shipt's retail partners, "load[] and unload[] [the] property into and from [their] vehicle[s] and deliver[]" the goods to their final destination, i.e., the ultimate consumer. *Id*. § 1.a. Thus, in addition to facilitating the online sale of goods through the Shipt App, Shipt provides delivery services for its retail partners. *Id*. ("Shipt is a provider of technology services used to provide shopping and delivery services."); Hutchins Decl. ¶ 3 (The Shipt App is an "online and mobile platform" that "connects retail customers … to [its retail

---

[1] For citations to documents and other pleadings in the docket, Plaintiff cites to the page numbers electronically generated at the top of each page by the ECF docket management system.

partners] and [delivery service drivers] for prompt, same-day, and local … delivery of" goods.).

### 2. Shipt's delivery service drivers transport goods that originate from outside Illinois, and for certain goods, outside the country.

The goods ordered by Illinois consumers through the Shipt App include alcohol, desktop and laptop computers manufactured by companies such as Dell and Hewlett Packard, various Apple products such as air-pods and chargers, Nintendo Switch, Nintendo Switch games, and Nintendo Switch controllers, pet food, cat litter, pet toys, toilet paper, cosmetics, soap, shampoo, and hair dye. *See* Hutchins Decl., Ex. C at p. 4 § 4.a.iii; *see also* Young Decl. ¶ 4. There is no suggestion—and nowhere does Shipt contest in its Motion—that the goods transported by its delivery service drivers originate from outside Illinois. Indeed, most, if not all of the goods transported by Shipt's delivery service drivers, originate from outside Illinois. *See* Young Decl. ¶ 4. These goods, which have traveled across state lines or outside the continental borders of the United Sates, are picked up by delivery service drivers from Shipt's major nationwide retailers and then transported to their final destination. *Id*. ¶¶ 2-3, 5.

### 3. The contract between Shipt and its delivery service drivers.

To become a delivery service driver for Shipt, the applicant must apply online through Shipt's website. *See* Hutchins Decl. ¶ 13. During this online application process, applicants are presented with two separate, stand-alone documents: "Our Independent Contractor Agreement" (IC Agreement) and "Arbitration Agreement." *See* Hutchins Decl., Exhs. C and D. Plaintiff signed both agreements. *Id*.

Under the IC Agreement, Shipt classifies its delivery service drivers, such as Plaintiff, "[a]s … independent business enterprise[s]"—instead of employees entitled to minimum wage, overtime or reimbursement of business expenses incurred in performing their delivery services. *See* Hutchins Decl., Ex. C at p. 3 § 2.d. Despite classifying its delivery service drivers as "independent business enterprises," Shipt controls, among other things, the type and weight of the vehicle they use to perform delivery services and, in fact, leases the delivery service drivers' vehicles during the periods of time they are "[actively] performing … [d]elivery [s]ervices on

3

behalf of Shipt …" *Id*. at p. 4 §§ 2.e., 4.a.i., and 4.b; *see also* Young Decl. ¶ 5. Incorporated by reference and attached to the IC Agreement as Exhibit A is the Arbitration Agreement, which provides in relevant part that:

> You and [Shipt] agree that any and all disputes, claims, or controversies of any kind and nature between us arising out of or relating to the relationship between us will be resolved through mandatory, binding arbitration.

Hutchins Decl., Ex. D ¶ 1. Paragraph 11 of the Arbitration Agreement contains an opt-out provision, but Plaintiff did not submit the form required to opt out. The Arbitration Agreement also contains a class/collective action waiver:

> YOU AND SHIPT WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS AND/OR COLLECTIVE ACTION AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM …

*Id*. ¶ 8. The IC Agreement states its enforceability is governed by "[t]he laws of the State of Delaware …" Hutchins Decl., Ex. C at p. 11 § 16.a. While the IC Agreement states it is governed by Delaware law, the enforceability of the Arbitration Agreement, on the other hand, is "governed by the [FAA]." *Id*., Ex. D ¶ 10.

### B. Procedural Background

In October 2020, Plaintiff filed a proposed collective and class action lawsuit alleging Shipt misclassifies its delivery service drivers as independent contractors rather than employees. *See* Dkt. 1. The complaint alleges Shipt violated the Fair Labor Standards Act of 1938 (FLSA), Illinois Wage Payment and Collection Act (IWPCA), and Illinois Minimum Wage Law (IMWL). *Id*. Plaintiff seeks to bring the FLSA claim as a nationwide collective action and her state claims as state-wide class actions. *Id*. In response, Shipt moved to compel Plaintiff to individual arbitration under the Arbitration Agreement, which is premised solely on the FAA. *See* Dkts. 25-26.

### III. CONTRARY TO ITS CONTENTION, *THIS* COURT—NOT AN ARBITRATOR—DECIDES THE THRESHOLD QUESTION OF WHETHER SHIPT'S DELIVERY SERVICE DRIVERS FALL WITHIN § 1'S EXEMPTION.

In the Motion, Shipt erroneously contends that the threshold question of whether § 1's

4

exemption applies is determined by an arbitrator—not this Court. *See* Motion § II.A, B ("Because [Plaintiff] agreed to delegate arbitrability issues to the arbitrator, the Court 'may not decide [them].' "). Shipt's contention, however, ignores recent Supreme Court precedent. This very issue was addressed in *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019). In *New Prime*, the Supreme Court held that "[g]iven the [FAA]'s terms and sequencing, … the … court should decide for itself whether § 1's 'contracts of employment' exclusion applies *before* ordering arbitration." *Id*. at 537 (italics added); *Singh v. Uber Technologies Inc*., 939 F.3d 210 (3d Cir. 2019) (The "courts must be the ones to determine whether an agreement is excluded from FAA coverage even where there is a delegation clause.") (citing *New Prime*, at 538). "After all, to invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, [this] [C]ourt must *first know* whether the [IC Agreement] itself falls within or beyond the boundaries of §§ 1 and 2." *New Prime*, at 537 (italics added). As *New Prime* put it, "[t]he parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the [FAA] authorizes a court to stay litigation and send the parties to an arbitral forum." *Id*. at 537-38.

In sum, even if the IC Agreement or Arbitration Agreement contain a delegation clause, that clause cannot be enforced if it appears in a contract which "trigger[s] § 1's 'contracts of employment' exception." *Id*. at 538. Here, that exception has been triggered; therefore, it is for this Court to determine § 1's applicability.

**IV. SHIPT'S DELIVERY SERVICE DRIVERS ARE TRANSPORTATION WORKERS WHOSE "CONTRACTS OF EMPLOYMENT" ARE EXEMPT FROM THE FAA.**

Section 2 of the FAA includes within its coverage "any … contract evidencing a transaction involving commerce," including an agreement "to settle by arbitration a controversy … arising out of such contract …" 9 U.S.C. § 2. "But like most laws, th[e] [FAA] [has exceptions]. Among other things, § 1 [of the FAA] says that 'nothing herein' may be used to compel arbitration in disputes involving the 'contracts of employment' of certain transportation workers." *New Prime*, 139 S.Ct.

5

at 536 (quoting 9 U.S.C. § 1); *see also Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 16 (1st Cir. 2020) ("Despite the broad scope of Section 2, the FAA does not apply to all contracts that include arbitration provisions."); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (The FAA's "breadth is not unqualified … [I]t exempts two enumerated categories of workers— 'seamen' and 'railroad employees'—as well as what we will call the residual category—'any other class of workers engaged in foreign or interstate commerce.' "). Specifically, "§ 1 carves out from the [FAA]'s coverage 'contracts of employment of ... [transportation] workers engaged in foreign or interstate commerce' "—this residual clause of § 1 is commonly known as the "transportation worker exemption." *New Prime*, at 536; *Waithaka*, at 17-18; *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 909-10 (9th Cir. 2020). For § 1's transportation worker exemption to apply, only two requirements must be met: there must be a (1) "contract[] of employment" involving (2) "[transportation] workers engaged in foreign or interstate commerce." *Id*. As explained below, both requirements have been met.

> A. **"Contracts of employment" exist between Shipt and its delivery service providers.**

In page 14, footnote 1 of its Motion, Shipt feebly contends that Plaintiff cannot qualify under § 1's exception "because the [IC Agreement] is not a 'contract[] of employment.'" That argument was also raised and rejected by the Supreme Court in *New Prime*. *See Singh*, 939 F.3d at 217 ("*New Prime* eliminated Uber's 'contract of employment' argument."). The Supreme Court in *New Prime* held that § 1's exception does not apply exclusively to contracts of "employees," but rather to "agreements to perform work," including those of independent contractors. *New Prime*, 139 S.Ct. at 543-44; *see also Waithaka*, 966 F.3d at 17; *Grubhub*, 970 F.3d at 800 fn. 1 ("The Supreme Court has held that 'contracts of employment' in § 1 includes not only contracts between employers and employees but also contracts with independent contractors. So for present purposes, it is not important whether the plaintiffs here are employees, as they contend, or independent contractors.") (internal citation omitted).

Here, there is no doubt Plaintiff's IC Agreement with "[Shipt] falls within § 1's

exception[.]" *New Prime*, at 544; *see also Waithaka*, at 17 (""There is no dispute that the independent contractor agreement at issue here would fall within the Section 1 exemption …"). Where the rubber meets the road is the answer to the next question: Do Shipt's delivery service drivers belong to a "class of [transportation] workers engaged in foreign or interstate commerce"? 9 U.S.C. § 1. If they do, then "the [C]ourt … lack[s] authority under the [FAA] to order [Plaintiff to] arbitration." *New Prime*, at 544.

### B. Shipt's delivery service drivers are "[transportation] workers engaged in foreign or interstate commerce."

The FAA excludes from coverage "[transportation] workers engaged in foreign or interstate commerce." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001) (quoting 9 U.S.C. § 1). As the Supreme Court noted in *Circuit City*, "[m]ost Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce.' " *Id*. (quoting *Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1471 (C.A.D.C. 1997)). In concluding the phrase "engaged in … commerce" in § 1's exclusion provision should be given a narrower construction, the Supreme Court found persuasive "a pair of cases decided in the 1974 Term concerning the meaning of the phrase 'engaged in commerce' in § 7 of the Clayton Act …" *Id*. at 117 (citing cases). In *Circuit City*, the Supreme Court noted "that the phrase 'engaged in commerce' in § 7 'means *engaged in the flow of interstate commerce* …" *Id*. (quoting *U.S. v. American Building Maintenance Industries*, 422 U.S. 271, 277–283 (1975) (italics added); s*ee also Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 195 (phrase "engaged in commerce" "appears to denote only persons or activities within the flow of interstate commerce")). Following *Circuit City*, the First, Seventh and Ninth Circuits—within a month of one another—recently examined the scope of the "transportation worker exemption" and what it means to be "engaged in foreign or interstate commerce" so as to fall within the residual clause of § 1's exemption.

### 1. The meaning of "class of workers engaged in foreign or interstate commerce" as interpreted by *Waithaka*, *Grubhub* and *Rittman*.

7

The circuit first to recently examine the scope of the transportation worker exemption post *Circuit City* was the First Circuit in *Waithaka*. "After close examination of the text and purpose of the [FAA] and … relevant [Supreme Court] precedent, [the First Circuit] h[e]ld that the exemption encompasses the contracts of transportation workers who transport goods or people within the *flow of interstate commerce*, not simply those who physically cross state lines in the course of their work." *Waithaka*, 966 F.3d at 13 (italics added). "Consistent with the Supreme Court's focus on 'the flow of interstate commerce' in *Circuit City*," *Waithaka* held "that workers moving goods … destined for, or coming from, other states – even if the workers [a]re responsible only for an intrastate leg of that interstate journey – [are] … 'engaged in interstate commerce[.]' " *Id*. at 22. With this legal backdrop in mind, the First Circuit found that drivers, who contracted to perform delivery services for Amazon through its Amazon Flex (AmFlex) application, "are transportation workers 'engaged in ... interstate commerce, regardless of whether the[y] … physically cross[ed] state lines." *Id*. at 26. "By virtue of their work transporting goods … 'within the flow of interstate commerce,' " *Waithaka* concluded that the plaintiff "and other AmFlex workers are 'a class of workers engaged in ... interstate commerce.' " *Id*. (quoting *Circuit City*, 532 U.S. at 118). Because "the FAA d[id] not govern th[e] dispute," "it provide[d] no basis for compelling … individual arbitration …" *Id*. Accordingly, the First Circuit in *Waithaka* affirmed the district court's order denying Amazon's motion to compel arbitration. *Id*.

In less than a month after *Waithaka*, the Seventh Circuit addressed § 1's exemption in context of local "food delivery drivers." *See Grubhub*, 970 F.3d at 799 ("This appeal requires us to decide whether food delivery drivers for Grubhub are exempt from the Act under § 1's residual category."). In *Grubhub*, the Seventh Circuit noted that "[b]oth we and our sister circuits have repeatedly emphasized that transportation workers are those who are 'actually engaged in the movement of goods in interstate commerce.' " *Id*. at 801 fn. 2 (citing cases). "To determine whether a class of workers meets that definition, we consider whether the interstate movement of goods is a central part of the class members' job description." *Id*. at 801-02. "Then, if such a class exists, we ask in turn whether the plaintiff is a member of it." *Id*. at 802. As the Seventh Circuit

8

noted, "[s]ometimes that determination is easy to make—as it is for truckers who drive an interstate route." *Id*. (citing *New Prime*, 139 S. Ct. at 539). "Sometimes that determination is harder—as it is for [delivery drivers] who drive an intrastate leg of an interstate route." *Id*. (citing *Waithaka*, 966 F.3d at 25–26). "Whether easy or hard, though, the inquiry is always focused on the worker's active engagement in the enterprise of moving goods across interstate lines. That is the inquiry that *Circuit City* demands." *Id*. In *Grubhub*, the plaintiffs—instead of focusing on "whether they belong[ed] to a class of workers actively engaged in the movement of goods across interstate lines"—incorrectly stressed that the prepared meals they were delivering contained "goods that have moved across state and even national lines" *Id*. at 802. Because "the plaintiffs [failed] to demonstrate that … interstate movement of goods is a central part of the job description of the class of workers to which they belong[,]" the Seventh Circuit "conclude[d] that the plaintiffs' contracts with Grubhub d[id] not fall within § 1 of the FAA." *Id*. at 803.

Fifteen days after the Seventh Circuit decided *Grubhub*, the Ninth Circuit decided *Rittmann*. In *Rittman*, just like in *Waithaka*, the Ninth Circuit held "that AmFlex delivery providers belong to a class of workers engaged in interstate commerce that falls within § 1's exemption." 971 F.3d at 915. In reaching its conclusion, and consistent with *Waithaka*, the Ninth Circuit rejected "Amazon's [contention] … that transportation workers must actually cross state lines to be 'engaged in interstate commerce' for the exemption to apply." *Id*. at 909. Examining "[t]he plain meaning of the relevant statutory text, case law interpreting the exemption's scope and application, and the construction of similar statutory language[,]" the Ninth Circuit held the phrase "engaged in foreign or interstate commerce" in § 1 "can reasonably be read to include workers employed to transport goods that are shipped across state lines[,]" even if the drivers themselves "do not cross state lines." *Id*. at 910, 915.

        **2.**        **Application of § 1 to Shipt's delivery service with *Waithaka*, *Grubhub* and *Rittman* as the legal backdrop.**

Admittedly, the determination here falls under the "harder" category as the Seventh Circuit pointed out in *Grubhub*. *See Grubhub*, 970 F.3d at 802. There is no "bright-line rule …" *Waithaka*,

9

966 F.3d at 25 (holding that "crossing state lines [is not] the touchstone of the exemption's test …"). "[T]he line-drawing conundrum" that we find ourselves stems not from *Waithaka*, *Grubhub* or *Rittman*, but "is a product of the [Supreme Court's decision in] *Circuit City* …" *Id*. "In concluding that the residual clause does not encompass all employment contracts, but only those of transportation workers, the [Supreme] Court left it to the lower courts to assess which workers fall within that category. Doing so unavoidably requires the line-drawing that courts often do." *Id*. at 25-26.

Here, in the spectrum between "local food delivery drivers," on one end, and "local delivery drivers transporting goods on the last leg of their interstate journey," on the other, Shipt's delivery service drivers fall closer in line with the latter class of workers. Undoubtedly, Shipt's delivery service drivers are not akin to "th[e] local food delivery drivers" in *Grubhub*, "who deliver take-out orders from local restaurants …" *Rittman*, 971 F.3d at 916 (distinguishing *Grubhub*). As the Ninth Circuit pointed out in *Rittman*, "prepared meals from local restaurants are not a type of good that are 'indisputably part of the stream of commerce.' " *Id*. (citing cases). That is why the Seventh Circuit "[i]n *Wallace* … held that Grubhub drivers, who deliver take-out orders from local restaurants, are not covered by the § 1 exemption." *Id*. (citing *Grubhub*, 970 F.3d at 802–03).

"Unlike in *Wallace*, here [Shipt's delivery service drivers] complete the delivery of goods that [are] ship[ped] across state lines" and even national borders.[2] *Rittman*, 971 F.3d at 917. The goods being delivered here are not simply perishable food products that are diced up, cooked, and transformed into hamburgers or pizzas and then delivered from local restaurants to customers. *See Grubhub*, 970 F.3d at 802 (Seventh Circuit criticizing plaintiffs for focusing on "where the goods have been" versus "whether they belong to a class of workers actively engaged in the movement of goods across interstate lines[.]"). Here, on the other hand, Shipt's delivery service drivers are actively and primarily engaged in the movement of goods, which have traveled across state lines

---

[2] Although Shipt emphasizes throughout its Motion the deliveries performed by Plaintiff are local and she does not cross state lines in performing her deliveries, Shipt "never contest[s] that [the] products [s]he and other [Shipt] [drivers] deliver cross state lines to reach their final destinations." *Waithaka*, 966 F.3d at 26, fn. 11.

10

and national borders, in order to bring those goods to their final destination (i.e., the consumers who purchased them). Thus, Shipt's delivery service drivers—similar to Amazon's AmFlex drivers—"form a part of the channels of interstate commerce, and … thus [belong to a class of workers actively] engaged in [foreign or] interstate commerce …" *Rittman*, 971 F.3d at 917.

In informing its determination on whether Shipt's delivery service drivers "belong to a class of workers actively engaged in the movement of goods across interstate lines," *Grubhub*, 970 F.3d at 802, the Court should consider "the [nature of the] business of the engaging company." *Waithaka*, 966 F.3d at 22 ("[T]he nature of the business for which the workers perform their activities is important in determining whether the contracts of a class of workers are covered by Section 1."); accord *Rittman*, 971 F.3d at 917 (Ninth Circuit majority agreeing with the First Circuit's conclusion that the nature of the business for whom the delivery person works is relevant in " 'inform[ing] th[eir] assessment.' "); *Singh*, 939 F.3d at 227-28 ("[W]hether [plaintiff] belongs to a class of transportation workers engaged in interstate commerce … can be informed by various factors … including, but not limited to …, the contents of the parties' agreement(s), *information regarding the industry in which the class of workers is engaged*, [and] information regarding the work performed by those workers …") (italics added). "After all, workers' activities are not pursued for their own sake. Rather, they carry out the objectives of a business, which may or may not involve the movement of 'persons or activities within the flow of interstate commerce[.]' " *Waithaka*, 966 F.3d at 22-23.

Here, Shipt's core business model is the sale and movement of goods between its nationwide retail partners and their consumers. Shipt's business model is no different from that of Amazon, except Amazon has larger array of third-party sellers. Indeed, Shipt readily admits it provides and "operates an online and mobile ordering platform … that connects" its nationwide retail partners with their customers. Motion at p. 8 (citing Hutchins Decl. ¶ 3). But to transport those goods from the retailers into the hands of the consumers, Shipt contracts with local delivery service drivers, such as Plaintiff, to deliver those goods "to their [final] destination." *Rittman*, 971 F.3d at 915. Thus, "[Shipt]'s business [involves] … the delivery of … goods, typically undertaken

11

by those businesses [courts] have considered to be engaged in foreign and interstate commerce, e.g., FedEx and UPS." *Id*. at 918. Accordingly, the nature of Shipt's business supports Plaintiff's contention she and her fellow Shipt delivery service drivers belong to a "class of [transportation] workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Because they fall within § 1's exemption, Plaintiff cannot be compelled to arbitration under the FAA.

**V.     NEITHER DELAWARE NOR ILLINOIS LAW CAN BE APPLIED TO SAVE SHIPT'S MOTION.**

In its Motion, Shipt concedes the "[t]he FAA plainly governs the Arbitration Agreement[.]" Motion at p. 12. Rather than hedge its bets, Shipt doubled down on its position when it stated "the parties agreed the Arbitration Agreement 'shall be governed by the [FAA],' " and there "[is] *no way around this language.*' " *Id*. at pp. 12-13 (quoting *Renard v. Ameriprise Fin. Servs., Inc*., 778 F.3d 563, 566 (7th Cir. 2015) (italics added)). Based on the "plain language" of the Arbitration Agreement and Shipt's admissions, the FAA—and *only* the FAA—can be applied to determine the enforceability of the Arbitration Agreement. *Rittman*, 971 F.3d at 920 ("[T]he plain language of the contract … prohibit[s] applying [state] law to the arbitration provision."). To put it in Shipt's terms, it " 'has no way around th[e] language' " *it* drafted. Motion at p. 13; *see also Cent. Illinois Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 176, 821 N.E.2d 206, 226 (2004) (holding any ambiguity in a contract will be "construed against the drafter").

As discussed in detail above, "the FAA does not apply because the [A]rbitration [Agreement] is … subject to the transportation worker exemption in § 1." *Rittman*, at 919. Because neither the FAA nor any other "law … governs the [A]rbitration [Agreement]," there is no "bases to compel arbitration." *Id*. at 921. Accordingly, the Motion must be denied.

**VI.    LIMITED DISCOVERY IS WARRANTED IF THE CURRENT EVIDENCE IS INSUFFICIENT FOR THE COURT TO MAKE AN INFORMED DECISION ON WHETHER SHIPT'S DELIVER SERVICE DRIVERS FALL WITHIN § 1'S EXEMPTION.**

While Plaintiff believes she and her fellow Shipt delivery service drivers fall within § 1's residual clause, she should be given the opportunity to conduct limited discovery if the Court

believes there is not enough evidence to make an informed decision on the issue. *See e.g., Singh*, 939 F.3d at 226-27. As the Third Circuit in *Singh* concluded:

> [W]here the issue of whether the residual clause of § 1 of the FAA … arises in a motion to compel arbitration, the motion to dismiss standard applies if the complaint and incorporated documents provide a sufficient factual basis for deciding the issue. *But* where those documents do not, or the plaintiff responds to the motion with additional facts that place the issue in dispute, 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing ...[.]'

*Id*. at 218 (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (emphasis added). In *Singh*, "[s]ince neither the … [c]omplaint nor incorporated documents suffice[d] for determining whether [plaintiff] belong[ed] to a class of workers … engaged in interstate commerce …, [the Third Circuit] … remand[ed] [the issue] for the [d]istrict [c]ourt to [address] …, with instruction[s] to permit limited discovery before entertaining further briefing." *Id*. at 219.

Similar to the plaintiff in *Singh*, Plaintiff contends she "ha[s] at least put forth enough to warrant discovery on the" § 1 residual clause inquiry. *Id*. at 216. "At this stage, a court may only make that determination if the complaint and incorporated documents suffice. If not, or if so and [plaintiff]'s opposition to the motion to compel arbitration places the issue in dispute, discovery must be allowed before entertaining further briefing on the question." *Id*. at 226. Here, if the Court concludes that the current complaint, incorporated documents and competing declarations do not suffice in answering the § 1 residual clause inquiry, then Plaintiff respectfully requests the Court to "permit discovery on the question before entertaining further briefing." *Id*.; *see also Livingston v. Assocs. Fin., Inc.*, No. 01 C 1659, 2001 WL 709465, at *2 (N.D. Ill. June 25, 2001), report and recommendation adopted, No. 01 C 1659, 2002 WL 424352 (N.D. Ill. Mar. 6, 2002) (holding that it is axiomatic that, if the Supreme Court places a burden of proof on a party, then that party must be given an opportunity to pursue discovery related to the issue).

## VII. CONCLUSION

Shipt's delivery service drivers belong to a class of transportation workers engaged in

foreign or interstate commerce and are thus exempt from the FAA's enforcement provisions. Because neither the FAA no other ground exists to enforce the Arbitration Agreement, Shipt's Motion must be denied. If, however, the Court concludes that the evidence presently submitted is insufficient, Plaintiff respectfully requests the Court to permit the parties to conduct limited discovery on the issue.

DATED: January 29, 2020                                         Respectfully submitted,

*s/ Jerusalem F. Beligan*
Jerusalem F. Beligan
*jbeligan@bisnarhcase.com*
Ian M. Silvers
*isilvers@bisnarchase.com*
BISNAR | CHASE LLP
1301 Dove Street, Suite 120
Newport Beach, CA 92660
Telephone: 949/752-2999
Facsimile: 949/752-2777

*s/ Michael L. Fradin*
Michael L. Fradin
*mike@fradinlaw.com*
LAW OFFICE OF MICHAEL L. FRADIN
8401 Crawford Avenue, Suite 104
Skokie, IL 60076
Telephone: 847/986-5889
Facsimile: 847/673-1228

*Counsel for Plaintiff and the Putative Classes*

## CERTIFICATE OF SERVICE

      Michael L. Fradin, an attorney, hereby certifies that he served the foregoing document by filing it with the Court's electronic filing system on January 29, 2021.

                                                    *s/ Michael L. Fradin*
                                                    Michael L. Fradin