UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMANTHA YOUNG, on behalf of herself and all others similarly situated, known and unknown, ) ) ) ) | |
| Plaintiff, ) ) | No. 1:20-CV-05858 |
| v. ) ) | Judge Edmond E. Chang |
| SHIPT, INC., ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Samantha Young is a former shopper, driver, and delivery person (she calls herself and others like her "Shoppers") for Shipt, Inc., a technology company that connects retail customers to local merchants and Shoppers for same-day, local selecting, purchasing, and delivery of groceries and household goods. Young alleges that she and her fellow Shoppers have been classified by Shipt as independent contractors, blocking them from receiving certain wages that are due to them. Young brings this proposed class action against Shipt, seeking additional wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b); the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*; and the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1, *et seq.*[1] Shipt has moved to dismiss the case for improper venue, arguing that

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331. Citations to the docket are indicated by "R." followed by the docket entry and page or paragraph number.

Young's claims must be resolved via arbitration. For the reasons explained in the Opinion, Shipt is right: the claims must be arbitrated.

## I. Background

Shipt is a technology company that provides online grocery-shopping and delivery services. R. 1, Compl. ¶ 6. The company describes itself as connecting customers and Shoppers via the Shipt Marketplace Application to facilitate same-day, on-demand retail shopping and delivery services in major metropolitan areas, including in Illinois. R. 26-1, April Hutchins Declaration ¶¶ 5–7. Customers place orders for goods using Shipt's platform. *Id.* ¶ 4. The platform then notifies nearby Shoppers of the customer's order. *Id.* If a Shopper chooses to accept the order, then they will visit the store, locate and purchase the selected items, and (if requested by the customer) provide same-day, local delivery. *Id.*

Moving away from the Shipt-customer-Shopper relationship, the Shipt-Shopper relationship is governed by an Independent Contractor Services Agreement (Shipt labels this agreement by its acronym, ICSA). Hutchins Decl. ¶ 14. This is the agreement that Young alleges misclassifies her and other Shoppes as an independent contractor. Shipt sends potential Shoppers the ICSA through HelloSign, a program that facilitates the electronic exchange of signed documents. *Id.* ¶ 15. Shoppers are also provided a separate, optional Arbitration Agreement. *Id.* ¶ 14. Young signed both the ICSA and the Arbitration Agreement in April 2019. *Id.* ¶ 19.

Young worked as a Shopper for Shipt from April 2019 through August 2019. Compl. ¶ 5. Young filed this proposed collective and class action, alleging that Shipt

misclassified its drivers as independent contractors and violated the wage-and-hour requirements under the Fair Labor Standards Act, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act. *Id.* ¶¶ 1, 15.

Shipt now moves to dismiss the action under the Federal Arbitration Act, 9 U.S.C. §§ 3–4, arguing that the case is in the wrong venue, Fed. R. Civ. P. 12(b)(3). Specifically, Shipt asserts that the Arbitration Agreement declares that "any and all disputes, claims, or controversies" arising out the relationship between Young and Shipt must "be resolved through mandatory, binding arbitration." R. 26-5, Def.'s Arbitration Agr. § 1. Young declined to opt out of the Arbitration Agreement, and Shipt thus contends that the claims must be arbitrated.

## II. Legal Standard

The Seventh Circuit has explained that a motion seeking dismissal based on an arbitration clause is best conceptualized as an objection to venue and, thus, properly brought under Civil Rule 12(b)(3). *Auto. Mechs. Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007). Generally speaking, improper-venue motions under Rule 12(b)(3) require the Court to assume the truth of the plaintiff's factual allegations and draw reasonable inferences in its favor—unless the defense offers evidence to the contrary. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011). If evidence is offered and a factual dispute is introduced, the Court is not limited to consideration of the pleadings, and the Court may consider evidence submitted with the motion without converting it to a summary judgment motion. *Id.* at 809–10.

### III. Analysis

Under the Federal Arbitration Act, an arbitration provision in a "contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections 3 and 4 of the Arbitration Act empower federal courts to stay litigation and compel arbitration according to the terms of the parties' agreement. 9 U.S.C. §§ 3, 4. Because "arbitration is a matter of contract," however, a federal court cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (cleaned up).[2] To compel arbitration under the Federal Arbitration Act, this Court first must find that (1) a written arbitration agreement exists between the parties; (2) there is a dispute among the parties within the scope of the arbitration agreement; and (3) one of the parties is refusing to comply with the arbitration agreement by declining to participate in arbitration. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005). The party opposing arbitration bears the burden of establishing why the arbitration provision should not be enforced. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).

Shipt contends that this case is not properly in federal court because Young "expressly agreed to submit any and all disputes arising out of the parties' relationship ... to individual arbitration." Def. Br. at 1. Shipt points to the independent-

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, Cleaning Up Quotations, 18 Journal of Appellate Practice and Process 143 (2017).

contractor agreement (which it labels the ICSA), which provides that, unless Young opts out, "any and all claims arising out of or relating to th[e] [ICSA] shall be resolved by binding arbitration pursuant to" a separate Arbitration Agreement. R. 26-4, Def.'s Exh. C, ICSA § 16. Shipt argues that all three prerequisites for compelling arbitration are satisfied here. First, there is a written arbitration agreement between Young and Shipt. Second, Young's claims fall within the scope of that arbitration agreement. Lastly, Young has refused to participate in arbitration proceedings.

Young does not argue that either the ICSA or the Arbitration Agreement is invalid or otherwise unenforceable. Although she was given the opportunity to opt out of the Agreement, she did not. Young also concedes that, if the Federal Arbitration Act applies, then the Arbitration Agreement is covered by Section 2 of the Act (because the agreement does involve "commerce," 9 U.S.C. § 2) and HER claims must be submitted to individual arbitration.

Young instead counters Shipt's motion by asserting that the Court cannot compel Shoppers to arbitrate because they are exempt from the Arbitration Act under 9 U.S.C. § 1, commonly referred to as the transportation-worker exemption. R. 31, Pl. Br. at 5–6. Young alternatively asks the Court to allow limited discovery on the exemption if "there is not enough evidence to make an informed decision." *Id.* at 13.

### A. Transportation-Worker Exemption

Section 1 excludes from the Federal Arbitration Act's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This is a wholesale exemption from the

Act—transportation workers covered by this exemption do not come within the purview of the Arbitration Act at all. Not surprisingly, then, federal courts—rather than an arbitrator—must determine whether the exemption applies or not. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019); *see Wallace v. Grubhub Holdings Inc.,* No. 18 C 4538, 2019 WL 1399986, at *2 (N.D. Ill. Mar. 28, 2019), *aff'd*, 970 F.3d 798 (7th Cir. 2020). For § 1's transportation-worker exemption to apply, there must be (1) a "contract of employment" involving (2) "[transportation] workers engaged in foreign or interstate commerce." *New Prime Inc.*, 139 S. Ct. at 536.

On the first element—whether there is a "contract of employment"—Shipt hints that the ICSA does not qualify. Def. Br. at 8 n.1. That is plainly wrong. In *New Prime*, the Supreme Court held that contracts of "employment" under § 1 encompass more than just contracts of "employees"—instead, contracts of employment can include "agreements to perform work," including those of independent contractors. 139 S. Ct. at 543–44. Because Young was an independent contractor, there is no doubt that Shipt and Young engaged in a "contract of employment" within the meaning of the transportation-worker exemption.

The only question remaining, then, is whether Shipt Shoppers qualify as a "class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. To understand the scope of this residual category, "our inquiry begins with the text." *Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 495 (7th Cir. 2021). This requires interpreting the words "based on their ordinary meaning at the time Congress enacted the statute." *Id.*

6

First, the term "class of workers" obligates the Court to examine the overall *occupation* instead of the individual worker. *Saxon*, 993 F.3d at 495. The relevant question is whether the class of Shoppers are engaged in interstate commerce and whether Young is a member of that class. Second, the specifically listed categories of "seamen" and "railroad employees" provide interpretive guidance on the residual category of the class of workers engaged in interstate commerce. *Id.* at 496. In *Circuit City Stores, Inc. v. Adams*, the Supreme Court explained that the phrase "engaged in commerce" as used in § 1 means something narrower than "affecting commerce" or "involving commerce" as used in § 2 of the Federal Arbitration Act. 532 U.S. 105, 115 (2001). The Supreme Court invoked the statutory interpretation canon *esjusdem generis* to conclude that the scope of the residual clause must be "controlled and defined by reference to the enumerated categories of workers which are recited just before it," that is, seamen and railroad workers. *Id.* at 114–15, 119; *see* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199 (2012).

With the anchor point of seamen and railroad employees in mind, cases in this Circuit and others "have repeatedly emphasized transportation workers are those who are actually engaged in the movement of goods in interstate commerce" as a core component of their job. *Wallace*, 970 F.3d at 801; *see id.* at 801 n.2 (collecting cases). The "inquiry is always focused on the worker's active engagement in the enterprise of moving goods across interstate lines." *Id.* at 802. This requires qualifying workers to "be connected not simply to the goods" that travel across state or national lines, "but to the act of moving those goods across state or national borders," such that the

7

class of workers themselves "are engaged *in the channels* of foreign or interstate commerce." *Id.* (emphasis in original). Sometimes answering this inquiry will be easy, as it is in the case of truckers driving an interstate delivery route. *Id.* But sometimes it will be more difficult, as it is in the case of truckers who drive an intrastate leg of an interstate route. *Id.*

In *Wallace*, another gig economy case, the Seventh Circuit held that food-delivery drivers for Grubhub, an online restaurant-food delivery service, do not fall within the class of transportation workers exempted under § 1 of the Federal Arbitration Act. 970 F.3d at 803. *Wallace* reasoned that drivers delivering meals from local restaurants are not engaged in moving goods *across* state lines. *Id.* at 802–03. Yes, the drivers carry goods that have *already* moved across state lines at some earlier time. *Id.* at 802. But to qualify as a transportation worker, the workers must be "connected" to the "act of moving those goods *across* state or national borders." *Id.* (emphasis added).

*Wallace* controls here: Shoppers who deliver goods from local retailers to local customers differ in no meaningful way from drivers who deliver food from local restaurants to local customers. To use the examples given in *Wallace*, Shoppers are more comparable to "dry cleaners who deliver pressed shirts manufactured in Taiwan" and "ice cream drivers selling treats made with milk from an out-of-state dairy," than seamen and railroad workers carrying goods across state lines. 970 F.3d at 802. So even though the goods have crossed state lines at some earlier, point, it matters only "what the worker does," not "where the goods have been." *Id. at* 802.

Young argues that goods transported through Shipt "are not simply perishable food products … delivered from local restaurants to customers." Pl. Br. at 10. But whether the goods are perishable or not makes no difference. As Shipt correctly points out, *Wallace* is silent on the *type* of goods moving in interstate commerce. R. 32, Def. Reply at 6. Although Young delivered Apple and Nintendo products that originated outside of Illinois, R. 31-1, Samantha Young Decl. ¶ 4, these goods resemble—in terms of their movement across state lines—the "package of potato chips … [that] may travel across several states before landing in a meal prepared by a local restaurant" and "a piece of dessert chocolate … from Switzerland" delivered by Grubhub drivers. *Wallace*, 970 F.3d at 802. The class of Shoppers are not directly engaged *in the channels* of foreign or interstate commerce, even when they transport goods that have crossed state lines.

Young also argues that Shipt's delivery-service drivers "fall closer in line" with local delivery drivers transporting goods on the last leg of their interstate journey, rather than the local food delivery drivers in *Wallace*. Pl. Br. at 10. In essence, Young contends that Shipt's core business model is the sale and shipping of goods between nationwide retailers and their consumers, so Shoppers are indeed engaged in interstate commerce. *Id.* at 11. But unlike online retailers such as Amazon, Shoppers only deliver goods *after* they already have arrived at the local retail store and only *after* a customer initiates a purchase from the retail store. Young Decl. ¶ 4 (goods are "purchased by consumers in Illinois" after they have been "distributed to" retail stores). In *O'Shea v. Maplebear Inc.*, the district court held that shoppers and delivery drivers

9

for Instacart, an online delivery company similar to Shipt, are not § 1 transportation workers. 508 F. Supp. 3d 279 (N.D. Ill. 2020). Like Shipt, Instacart facilitates same-day, on-demand grocery shopping and delivery services in Illinois. *Id.* at 284. Like Shipt, customers place orders for groceries from local stores through Instacart's website or app. *Id.* The district court acknowledged that, although Instacart workers may be an "essential part of [a] larger series of interstate transactions," this is insufficient "to bring those workers within the Section 1 exemption." *Id.* at 288 (cleaned up). Neither Instacart nor Instacart shoppers are engaged in the actual enterprise of moving goods *across* state lines. *Id.* Just so here. Shipt Shoppers are delivering goods from local stores to local customers.

Young's final argument relies on two out-of-Circuit decisions involving "last mile" drivers, that is, drivers who drive the final legs of interstate shipments of goods to online retail customers. Pl. Br. at 7–11; *see Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020). But both decisions are distinguishable. In those cases, the First and Ninth Circuit held that last-mile drivers who perform intrastate deliveries may be exempt as a transportation worker if they "are still part of a continuous interstate transportation." *Rittmann*, 971 F.3d at 916; *accord Waithaka*, 966 F.3d at 20–26. The drivers at issue there were part of the Amazon Flex program, under which Amazon contracts with drivers to make "last mile" deliveries of products from Amazon warehouses to the products' ultimate customer destination. What is different about that delivery, however, is that from the moment these goods entered "the flow of interstate commerce,"

10

they already were "destined for" the customers to whom the Amazon Flex drivers made deliveries. *Waithaka*, 966 F.3d at 20. In other words, the drivers transported the already-purchased goods on the last leg of their interstate journey.

Here, Shipt Shoppers fulfill functions distinct from Amazon Flex drivers. Instead of carrying goods directly from a seller to customers based on a sale that caused the goods to start their interstate journey, Shoppers must wait for customers to purchase goods from a retail store. Young Decl. ¶ 4. "[T]he flow in interstate commerce ha[s] ceased" when the goods are delivered to the retail store, and the goods "have come to a permanent rest within the state." *Rittmann*, 971 F.3d at 916. As Shipt accurately identifies, "Shoppers fall on the intrastate side … because their job duties take place only after goods have come to rest." Def. Reply at 10. There is a break in the channels of commerce between the transportation of goods to a local retail store and the *subsequent* local purchases from that store by Shipt customers. *Rittmann*, 971 F.3d at 916; *see Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943) (distinguishing between goods in "practical continuity [of] transit" and goods "acquired and held by a local merchant for local disposition."). Shipt Shoppers are not "last mile" drivers. Young is not covered by the transportation-worker exemption. Because Young does not otherwise contest the validity of the Arbitration Agreement or the applicability of the agreement to her claims, "arbitration should be compelled." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017).[3]

---

[3] It is worth noting that this decision applies to the named plaintiff, Samantha Young, and no one else. It appears that no one else has filed an opt-in to this proposed FLSA collective; Young's is the only consent form on file, R. 10. Even if there were, the collective action

11

## B. Discovery

Lastly, Young requests the "opportunity to conduct limited discovery if the Court believes there is not enough to make an informed decision on the [Section 1] issue." Pl. Br. at 13. She cites *Singh v. Uber Technologies Inc.*, which held that "parties should be entitled to discovery on the question of arbitrability" where there is insufficient factual basis for deciding a motion to compel arbitration. 939 F.3d 210 (3d Cir. 2019).

It is true that limited discovery before a decision on a motion to compel arbitration is appropriate where a court still needs to resolve factual questions relevant to the enforceability of the arbitration agreement. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S.Ct. 2847, 2855 (2010); *see e.g., Deputy v. Lehman Bros.*, 345 F.3d 494, 511 (7th Cir. 2003) (holding that the defendant "must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of [the plaintiff's] signature" in arbitration agreement). But there is no lingering factual question here. Young does not dispute the enforceability or validity of either the ICSA or the Arbitration Agreement. Young also concedes that she never crossed state lines as a Shopper and Shoppers only transport goods after customers order goods from local retail stores. Allowing discovery, without any factual dispute to resolve, would run afoul of "the unmistakably clear congressional purpose that the arbitration procedure … be speedy and not subject to delay and obstruction." *Merit Ins. Co. v.*

---

has not yet been certified or even litigated (and indeed not even conditional certification was litigated). So this pre-certification decision should not affect any opt-ins.

*Leatherby Ins. Co.,* 581 F.2d 137, 142 (7th Cir. 1978). The request for discovery is denied.

## IV. Conclusion

Shipt's motion to compel arbitration is granted. Because the claims set forth in the Complaint are all subject to arbitration, the Court holds that the claims must be arbitrated and thus the case is dismissed for improper venue.

ENTERED:

s/Edmond E. Chang<br>
Honorable Edmond E. Chang<br>
United States District Judge

DATE: September 27, 2021